RECEIVED
DEC - 3 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| DUNE OPERATING COMPANY, INC. | CIVIL ACTION NO. 08-121 |
| VERSUS | JUDGE MELANÇON |
| PREMIERE, INC, ET. AL. | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Before the Court are defendant Premiere, Inc.'s ("Premiere" or "defendant") Motion for Summary Judgment [Rec. Doc. 16], plaintiff Dune Operating Company, Inc.'s ("Dune" or "plaintiff") Memorandum in Opposition and Cross Motion for Summary Judgment [Rec. Doc. 26], defendant's Memorandum in Opposition to Cross Motion for Summary Judgment and Reply to plaintiff's Opposition [Rec. Doc. 30], and plaintiff's Response thereto [Rec. Doc. 34]. For the reasons that follow, defendant's Motion [Rec. Doc. 16] will be **DENIED** and plaintiff's Cross-Motion [Rec. Doc. 26] will be **GRANTED**.

### I. BACKGROUND

On August 15, 2006, Premiere and Goldking Operating Company[1] entered into a "Master Service Agreement" (the "Agreement"). On August 27, 2007, while performing work pursuant to the Agreement, Dune alleges that Premiere negligently damaged Dune's property at the E.M. Watkins Well No. 119 in the South Florence Field of Vermillion Parish, Louisiana. Dune instituted this action to recover damages

---

[1] It is undisputed that Dune is the successor in interest to Goldking Operating Company and is bound by the obligations of Goldking to the same extent as though they had entered into those obligations themselves.

allegedly resulting from Premiere's negligence. While denying the allegations of negligence, Premiere argues that any negligence on its part is inconsequential due to the reciprocal defense and indemnity provisions contained in the Agreement. Dune, however, avers that the Texas Oilfield Anti-Indemnity Statute, Tx. Civ. Prac. & Rem. §127.001, *et. seq.*, prohibits the indemnity sought; that the exception to the Texas Anti-Indemnity Statute is not met in this case because the indemnity sought could not be supported by insurance; that if the Texas Oilfield Anti-Indemnity Statute does apply, it would only apply to the extent of the procured insurance[2]; or, alternatively, that Premiere breached its obligations under the Agreement and, thus, is not entitled to indemnification.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. Where, as here, the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence

---

[2] As Dune failed to procure insurance as required by the Agreement, it claims that its liability under this theory would be nil.

2

of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex*, 477 U.S. at 324. As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

A.  *Choice of Law*

As its jurisdiction is premised on diversity of citizenship, the Court must first determine what law will govern the interpretation of the Agreement. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In this case, the Agreement contains a "choice of law" provision which states:

> THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO ITS CONFLICT OF LAWS PRINCIPLES. TO THE EXTENT APPLICABLE, THIS AGREEMENT SHALL BE GOVERNED BY THE GENERAL MARITIME LAW OF THE UNITED STATES OF AMERICA WITHOUT REGARD TO ITS

4

CONFLICT OF LAWS PRINCIPLES. THE VENUE OF ANY LAW SUIT ARISING HEREUNDER SHALL BE HARRIS COUNTY, TEXAS UNLESS OTHERWISE REQUIRED BY LAW.[3]

Both citing the language of this provision, Dune argues that Texas law should govern the dispute while Premiere argues that the dispute should be governed by the general maritime law.

To determine what law applies, the Court will look to the conflicts of law principles of the forum state - *i.e.* Louisiana. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Louisiana law generally upholds parties' choice of law ". . . except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable" under the general conflicts of law provisions. La. Civ. Code Art. 3540. In fact, a choice of law provision is presumed valid and enforceable unless proven otherwise. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994), *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982). Neither party in this case contests the validity of the choice of law provision and, thus, the Court will, for the purposes of this motion, presume that it is valid.[4]

---

[3] Though the choice of law provision also contains a choice of venue provision stating that the proper venue is Harris County, Texas, under Louisiana, Texas, and Federal Rules of Civil Procedure parties are required to raise such a defense before other pleadings are filed. *See* Fed. R. Civ. Pro. 12(b) & 12(h); Tex R. Civ. Pro. 86; La. Code Civ. Pro. Art. 925. As there is no indication in the record that any party has objected to this venue, any objection has been waived.

[4] Assuming, *arguendo*, that one of the parties had attacked the validity of the provision, however, the Court finds that the provision is valid under Louisiana law, which is the law which would have applied in the absence of the choice of law provision, as application of either the general maritime law or Texas law would not violate a strong public policy of the

5

The next part of the inquiry, then, is which choice of law applies in this case pursuant to the Agreement - Texas or the general maritime law. This determination must be made by reference to Louisiana contracts law. See supra.[5] In Louisiana, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Art. 2046. "The words of a contract must be given their generally prevailing meaning," and "[e]ach provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code Arts. 2047 and 2050. In this case, the words of choice of law provision are clear - the Agreement is to be "governed by the laws of the State of Texas" except to the extent that the general maritime law would otherwise be applicable. Any other reading of the provision would render the first clause meaningless in direct contravention of the basic rules of contract interpretation.[6]

Given this interpretation, it must be determined whether the general maritime

---

State of Louisiana. See La. Civ. Code Arts. 3515 and 3537.

[5] While the Court has already determined that a valid choice of law provision exists, because the provision contains two separate choices of law, the Court must rely on the law of the forum state to decide which choice applies in this case. See i.e. Klaxon, supra.

[6] Premiere maintains that Texas is the "fallback" choice of law. However, the wording of the provision and the order of the choices are telling. Had the parties, both of whom are sophisticated businesses, intended maritime law to apply in all instances in which it is possible, the Agreement would likely have read, "To the extent possible" as opposed to "To the extent applicable." The choice of wording suggests that the general maritime law must have otherwise been applicable before it would be applied to a dispute. Further, it is important to note that Texas is the first choice of law stated in the choice of law provision. Under Premiere's argument, there would never be a situation in which Texas law would apply thus rendering that provision meaningless.

law would otherwise apply to this case. Here, the incident occurred at the E.M. Watkins Well No. 119 in the South Florence Field, an inland gas field located in Vermillion Parish, Louisiana. Based on these facts, it is not seriously argued by either party that the general maritime law would apply in the absence of the choice of law provision as the incident lacks both the *situs* and *nexus* requirements. Accordingly, Texas law will govern the outcome of these motions.

B. <u>Oilfield Indemnification under Texas law</u>

At issue in these motions is Dune's agreement to indemnify Premiere from Premiere's own negligence. Generally, the Texas Oilfield Anti-Indemnity Act, Tx. Civ. Prac. & Rem. §127.001, *et. seq.*, voids indemnity provisions pertaining to oil, gas, or water wells if the provision indemnifies against the negligence of the indemnitee arising from personal injury or death, property damage, or any other loss or expense arising therefrom. Tx. Civ. Prac. & Rem. §127.003. This general prohibition does not apply ". . . if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor." Tx. Civ. Prac. & Rem. §127.005. However, this exception only applies to two types of otherwise unenforceable obligations – "mutual indemnity obligations" and "unilateral indemnity obligations." *Id.*

Here, it is undisputed that, if the contested provision fits into the exception, it is a "mutual indemnity obligation." A "mutual indemnity obligation" is defined as

. . .an indemnity obligation in an agreement pertaining to a well for oil,

7

gas, or water or to a mine for a mineral in which the parties agree to indemnify each other and each other's contractors and their employees against loss, liability, or damages arising in connection with bodily injury, death, and damage to property of the respective employees, contractors or their employees, and invitees of each party arising out of or resulting from the performance of the agreement. Tx. Civ. Prac. & Rem. §127.001(3).

Conspicuously absent from this definition are the losses, liabilities, or damages arising in connection with bodily injury, death, and damages to property of the contracting parties themselves. *See Winding You Way Through the Texas Oilfield Anti-Indemnity Statute*, 37 S. Tex. L. Rev. 161, 183 (1996). As correctly pointed out by Dune, and undisputed by Premiere, the only damages at issue in this case are property damages to the contracting party, *i.e.* Dune. While the indemnity provisions contained in the Agreement may be otherwise enforceable insofar as they fit within the definition of a "mutual indemnity obligation," an indemnity agreement for the element of damages presented in this case simply fails to fit within the exception and is thus unenforceable. Accordingly, under the general provisions of the Texas Oilfield Anti-Indemnity Act, the indemnity provision, as it applies in this case, is void and no indemnity is owed to Premiere.

## IV. CONCLUSION

It is clear from the face of the Agreement and the applicable choice of law principles that Texas law governs the outcome of this dispute. Under Texas law, oilfield indemnity provisions are generally void except in narrow circumstances. As this agreement, insofar as it applies in this case, does not fit within those exceptions,

no indemnity is owed and Premiere's Motion for Summary must be **DENIED** and Dune's Cross-Motion for Summary Judgment [Rec. Doc. 26] concerning indemnity must be **GRANTED**.